17-2776, 17-2777 Whenever you're ready. Good morning, Your Honor. Good morning. Your Honors. My name is Karen Bentz, Law Office of Karen A. Bentz. On behalf of the appellants, Gershwin Sprauve and Andrea Smith. I'd like to reserve five minutes for rebuttal. That'll be granted. Your Honors, this is a very simple case based on your prior holding. An employee of a public employer is a public employee. And I want to highlight a few things that may not have come through in the briefing in this matter. We believe that this Court has already decided the issue of whether or not the appellants are public employees. In your prior opinion, Your Honor, you dealt specifically with the issue addressed in the V.I. Taxi Association case cited by the appellee. Which is the issue of whether or not WICO is a public agency for purposes of Section 530. You stated in your opinion at page 16 that you were not persuaded by the argument that under the general business corporation laws of the Virgin Islands, WICO is in power to take action and therefore is a private corporation. Well, didn't we in the first opinion emphasize that, this is at footnote three, we were only examining whether WICO is a government entity for purposes of determining whether constitutional claims can be lodged directly against it. In other words, we haven't decided this issue yet, have we? Not this narrow issue, but it's an employment case, both of them are. And we're deciding whether or not it's a public entity. You decided it was a public entity. You also stated in your opinion at page 15 that you weren't persuaded by WICO's argument that it should be considered a governmental entity because their employees, unlike other governmental employees, are not beneficiaries of the government retirement system, personal merit system, and not subject to jurisdiction. I think you can read... But here though, you're saying they were quote-unquote regular employees, right? Yes, yes, your honor. But it seems that to be a regular employee, you're one of two things. One is, you must have been appointed to a position in the classified or career service, or served in a temporary position for more than two years in a department or agency of the executive branch. How do you meet either of those criteria? Well, this is a chicken and egg situation, your honor. Okay. In 1992, when the last transfer happened here, WICO continued to operate, up until your opinion, and still continues to do so, as though it was a private business, even though it was a public entity. So nothing actually was accomplished as far as... Well, first of all... Let me explain why we don't meet either of those. Because WICO is a truly eccentric or unusual organization. Not the people that work there, but the way it came into being and the way it's evolved over time. I'm not saying that at all, your honor. I think that they were operating because they didn't know what they were as a public entity. Well, but I'm interested in your answer to Judge Shigaris' question, which of those two... You need to meet one of those two or both of those two, and I haven't heard you say which of those two your clients meet. Well, it's our position that these employees are regular employees. Ms. Smith was a grandfathered in. She was hired before the Act in 1992. Sproul was hired after the Act. But they were hired under a regime involving an employee handbook and all. Isn't that all separate from whether they're regular employees or not? No, your honor. We believe that it's our position that they are regular employees and that they meet the competitive hiring procedures. I mean, you have to literally go back and... But were they appointed or were they temporary? Or are you saying they can meet the definition of regular without one of those two? They can because of the situation that went on at WICO. They continue to operate as a private company, and they didn't change their ways of operating with regard to employees. But if you look at this VITA case, it actually holds that Bisholta was acting as an officer of a public agency. That's what VITA states in the standing issue. So, therefore, when Bisholta... I'm sorry, which case? The Virgin Islands Tax Association case that Appalese was relying on. If you look at that, that means that when he terminated them, he was an officer of a public agency. So, therefore, meaning Mr. Bisholta, he terminated both of my clients. I think everyone agrees that it's public for the reasons you articulated. I think that's a given. I think that you've still got to persuade us that they're regular employees, and the statute seems to require one of the two things that Judge Shigaris asked you about, and I still haven't heard whether they've been appointed or were temporary. Well, neither one of them have been appointed. They were there. Nor were they temporary. No, they were not temporary. Right, so if they're not regular for one of those two reasons, they have to be regular for some other reason. Let me show you my cards. I thought you were going to argue, perhaps, that they have to be regular by default. In other words, there are two types of employees. There are the exempt and the non-exempt. And if you're in the civil service and you're not an exempt worker, then you have to be regular unless you're probationary. And you know that these two aren't probationary. They were long tenured, so they weren't probationary. So is that your argument, that they have to be regular? There's no other option? That's exactly what we're arguing in the briefs. I was simply trying to highlight, for your honor, some things that I thought were not in the briefs. But we go through in the briefs. But that does seem contrary to the statutory language that Judge Chiguera cited to you. So do you have a statutory hook for us apart from the one he cited, or is it more just sort of the nature of things that they're civil servants and, therefore, it necessarily follows that all civil servants who aren't on probation are regular? Well, they have to be. They're not exempt, and they are not on probation. And so, therefore, the Virgin Islands Code states that someone who is exempt, unless someone is exempt, they are a career service employee. That's what the code states. Well, what about the WICO employee handbook? It says, quote, governs the relationship between WICO and its employees. That's a JA 294. Doesn't that seem to create sort of an alternate route for the employment relationship, the rules of the employment relationship? Well, it does, but the code, what we believe, your honors, is that, well, first of all, before I get to that, let me just go back to one with regard to the prior questions, your honor. The code does list a number of exceptions to whether or not someone is exempt or career, and none of which of these apply in this case. Therefore, there is no other option than for the appellants to be classed as career public service employees. That's what we're arguing in the brief. And that's at 3VIC 25451A, B, and C. So if you look at that. They've been appointed by the governor and all that. Right. That didn't happen either. Again, because of the legacy aspect of this strange entity. Exactly, we're looking at it in a vacuum now. So if we've got this idiosyncratic entity that's been grandfathered in, it is, as you say, a public entity. It's pretty odd, isn't it, just at a commonsensical level, to say that a COO and a CFO are entitled to the sort of panoply of civil service protections that are typically given to non-managerial or middle management. I mean, they were at the very highest echelons of the company other than the CEO. So there's something very sort of odd about that claim, isn't there? I don't find it odd at all. Why? Employees are entitled to due process protections, as long as they meet the definition of the regular employee. Oh, of course they're entitled to due process if they're public employees, but we're discussing here whether they're civil servants or not, entitled to all civil service protections. And if you're right, what that means then is that the number two and the number three person in the company, or the two number twos, can be completely at odds on all manner of policy and goal setting and management style with the CEO. They could be completely at odds in every way, and you're saying that the CEO must continue to work with these two people. Isn't that the upshot of your argument? That's factually what happened, Your Honor. So you want this public entity to run the risk of having complete and utter chaos and gridlock with a CEO who wants to go east and a COO and a CFO who want to go west. Well, I disagree with your characterization of the facts, Your Honor. No, I'm not talking about the facts of this case. I'm saying the upshot of your argument is that if the COO and the CFO are entitled to civil service protections, this could be like Adams and Jefferson. They could be working directly across purposes, and you're saying the CEO must continue to work with those two people. May I respond, Your Honor? Sure. I'm saying that based on the facts of this case, these folks were grandfathered in. They didn't have a choice whether or not the company was sold to the government or not. They were there. They continued to do their jobs, and they then were required to, and Gershwin Sproul went through his competitive process of trying to become the CEO. There was competitive process for that, interviews, everything, and he lost and they gave him another job. That doesn't necessarily mean there's going to be chaos. And I'll reserve the rest of my time. Okay. All righty. Thank you. Thank you. Good morning, Your Honors. Good morning, Counsel. Harold Rich of Dudley Rich on behalf of the West Indian Company Limited. I want to begin by going to the underlying problem that became obvious as my opponent was trying to answer your questions. The idea that these two people should be considered to be career public service employees of an executive branch of the Virgin Islands was not explored or examined in the way Your Honors are examining now because it wasn't raised before the district court and it's not part of this record. You would have to go picking back through the record to things that were raised in 2013 and then not included and not addressed again when the summary judgments were before the district court to find any place where Mr. Sproul or Ms. Smith ever tried to argue that they should be treated as career public service employees of the Virgin Islands government's executive branch. I understand that argument, but the district court did consider it. I believe the district court did consider it, so let's assume we will consider it. We understand your argument, though. Well, yeah, and I just wanted to add that the district court considered it only in raising the fact that there was nothing in the record to address it and therefore there was no evidence to even suggest that it would apply. And so that is a manner of considering it? No evidence they were classified or no evidence they were regular? Either, neither. There was simply no evidence on the subject and what the judge mentioned were just two reasons why there was no such evidence, mentioning that they hadn't sat for competitive exams and that they otherwise didn't meet the definition. But also to go back to Your Honors' prior opinion in this case, we submit that there is absolutely nothing in the district court's opinion that is in any way inconsistent with this court's holding in the prior opinion. This court did not hold that WICO is a public employer for purposes of career public service. This court held that WICO is a public entity for purposes of constitutional claims. Right, but in this case, we have to determine what it is, and it's in the executive branch, right? It has to be. Where else could it be? Well, I think that argument sort of misses the point. It is not an executive branch agency under a Virgin Islands statute. You have to look to Virgin Islands law to determine what WICO is and where it fits and where it does not. Where does it fit? If it's not part of the executive, where does it fit within the Virgin Islands government? It fits under the act by which it was acquired, and that is unique because WICO was not created by statute. WICO was purchased, and a statute was enacted to approve that purchase and to enact the stock purchase agreement as law, and so WICO fits only under the act and the stock purchase agreement. It does not fit under the other categories because it wasn't created by statute. So does that mean it's a public entity not within any of the three branches of the Virgin Islands government? It is owned by the executive branch. I agree with that, Your Honor, as every single entity is, but that isn't the test for whether these are career public service employees. One of the things that the appellants are simply ignoring is the definitions in Section 530 of Title III as to which employees are entitled to property interest in their continued employment, and if you look at Title III, 530, it contains a series of definitions as to who is entitled to these protections, and particularly under Section 2, there is a requirement that a person to have this due process right as a regular career public service employee must have been dismissed by a head officer of an executive department or agency, and then there is a further definition of what that means, not simply by reference to whether it's the executive branch or the judicial branch, but in the laws of the Virgin Islands, there's a specific definition. A head officer is defined, and the executive branch or agency is defined. Instrumentality of the government includes a whole list of agencies, which in some ways may be similar to WICO, like the Water and Power Authority, the Waste Management Authority, but at no time, even since the acquisition of WICO, has WICO ever been added to Section 530A. All right, so WICO is truly unique. It's owned by the executive. Then are you arguing that none of its employees are entitled to civil service protections? That is correct, Your Honor, and because the Act specifically incorporated a different method for WICO's employees. WICO's employees are entitled to the protections of the Wrongful Discharge Act and are governed by the Employee Handbook and are entitled to WICO's pension, which is not facing any of the problems that the GERS is. WICO's employees are treated differently. They are hired differently, they are fired differently, and they have different rights when they are fired because they're entitled to use the Wrongful Discharge Act to address their firing, which does not apply to the government employees who go before the Public Employee Relations Board. Is it sort of like a federal government, a GSE? Like what historically, you know, Sally Mae, Fannie Mae, Freddie Mac, those kinds of... I think that actually... You know, it's sort of got a little bit of government, you know, funding and feel and everything, but it acts like a private corporation and all other... Maybe even Amtrak. Or Amtrak. Well, and Amtrak's a government. Amtrak's a government. The Supreme Court held in the Amtrak case that it is part of the executive branch, right? Yes, they did, but they also held that it operates under D.C. corporation law in a number of ways. I think that WICO doesn't actually fit any of those. I'm not aware of another situation where we have an entity that was previously a private corporation and then the stock was acquired by the government and the agreement between the government and the corporation, the purchase agreement, became law. And I think the best way to look at how we deal with this is the way the Virgin Islands Supreme Court dealt with it in the taxi case, which is why we cited and discussed it in our brief. And in that case, which, by the way, I argued before the Virgin Islands Supreme Court, we had a long discussion about how WICO's position that for most of its operational purposes, it operates under the general corporations laws of the Virgin Islands as opposed to all of the strictures that apply to other government agencies, is because of the way it was acquired and because of Act 58... I can never remember the number, but the Act by which it was acquired. And the Virgin Islands Supreme Court examined this court's previous opinion and the issues very carefully, and they came to that same conclusion. They did say that for purposes of whether you could have taxpayers standing against WICO, that they considered it public. But for all other purposes, including its decisions about contracting and operation, it was entitled to the deference of the business judgment rule because the legislature intended it to operate like a corporation. And they were concerned with some of the same things that your honors have raised here, with allowing WICO to operate as it has very successfully done for the good of the Virgin Islands without having to go through a lot of the cumbersome government procedures that could throw one of the major focuses of our tourist industry into complete chaos. The idea that every employee of WICO is entitled to full civil service protection would mean that WICO would have no ability to decide who its management is. WICO has a board, and the board has a process. And again, I go back to the point that the failure to flesh out this argument below is part of the problem here because there's nothing in the record that addresses any of these things. But it's clear that under this court's opinion... What would you have us do? Do you want us to remand it? Absolutely not, your honor. They had their chance below, and it is not up to the court. I would like... Well, if the argument wasn't that Sprave and Smith are entitled to civil service protections, what was the argument below? The argument below, and I detailed this in the brief, and you can see it in the appendix, they made the argument that they were entitled to protection under the Wrongful Discharge Act, the Stock Purchase Agreement, and the Employee Handbook. That was their argument. That was everything that was presented below. They also made arguments under the First Amendment and under Equal Protection. All of those arguments were rejected. They have abandoned those. But the district court carefully considered and rejected the arguments because under the Wrongful Discharge Act, it does not apply to executive managerial employees like these two plaintiffs. And so that didn't help them. And the court found that the handbook and the act gave them no property interest. And then the court also noted that the only other place they could get a property interest under Virgin Islands law would have been if they had been career public service employees, which they were not, and there was nothing in the record to suggest they might be. And the reason they weren't, I think, I recall the district court saying, was they're not regular employees. The district court said they didn't follow any of the processes in the personal merit system or under the Virgin Islands Code to become regular employees. They didn't sit for competitive exams. They weren't appointed by the governor. They weren't involved in the personal merit system. They didn't fit any of those criteria because they don't work. They work for an entity that's owned by the government, but they weren't hired through that process. And as Your Honor pointed out, had they been, persons in a position like this, a position of such high authority, would not have been considered regular. They would have been the type of political appointees who would change with the administration. That is why there are those distinctions, because policymaking employees do not have a property interest in continued employment. But if they were in the executive branch, I know this isn't your argument, but I'm trying to give you a hypothetical so I can understand this better. If this were firmly within the executive branch of government, isn't Ms. Bentz right that because they don't satisfy one of those exceptions, including appointment by the governor, the default position is they would be civil servants? Well, the problem with that is they're not in the executive branch of the government because the only way you know they're being appointed by the governor doesn't make any sense. I asked you a hypothetical. I'm saying, I'm trying to understand the dichotomy here. I understand what you're saying, that this is not, you've said clearly, I think, that WICO is owned by the executive branch but not within the executive branch, and it operates outside the executive branch in terms of hiring, firing, etc., employee rights, etc. That's your argument, right? Yes, Your Honor, and that is consistent with how the Virgin Islands Supreme Court has reconciled this court's prior opinion with the Act and the Stock Purchase Agreement and the laws of the Virgin Islands, which I submit, this is a question of Virgin Islands law, and looking to how the Virgin Islands Supreme Court reconciled those things is extremely persuasive. All right, but if the counterfactual, if it were in the executive branch, isn't Ms. Bentz right that if you don't satisfy one of those, I think, seven exceptions, the most sort of theoretically applicable one here would have been appointment by the governor, etc. If you don't satisfy one of those, you're in the civil service, correct? That would mean that everyone at WICO. No, no, no, not WICO. I'm not talking about WICO. I'm asking a hypothetical. I'm asking if executive branch workers who aren't subject to one of those exceptions, by default they are in the classified service, in the civil service, right? I'm not sure that that is the case, Your Honor. Okay. It could be. I don't think that it applies to what's happening here. I understand, Your Honor, it's hypothetical. And I hadn't really thought about it that way because it's so far removed from the facts of this case. I understand the concern. And the problem is that that would then also change a whole lot of other ways in which the government operates that I don't think was ever the intent of those statutes. And the other problem is that you have to reconcile the legislative scheme for government and career and public service employees and all the definitions that appear in that scheme with the stock purchase agreement and the WICO structure. And you're saying it doesn't fit. It's the ultimate square peg in a round hole. Exactly, Your Honor. So don't even try to sort of analogize WICO to the regime, the fairly complicated regime of hiring and firing civil servants. Because there are so many other elements to that regime. It's not just a matter of, first of all, if WICO, if this did apply to WICO, then the heads of the agencies would have been appointed by the governor. They wouldn't have been hired by the way these people were hired. And the position, for instance, that Mr. Sproul applied for and didn't get wouldn't have been advertised in that way. It wasn't a civil service examination. It didn't go through the whole political process. It wasn't a notice of personnel action. They're not paid through the government. I mean, there are so many different levels. I hate to, maybe this is your next case, but if WICO is what you say it is, it sounds like it could be a separation of powers problem. No, Your Honor. It's neither legislative, judicial, executive. It's owned by the executive, but it's not controlled and part of the executive. It operates through its own handbook and its own policies and procedures. I mean, that seems, I don't know. I'm not saying that at all, Your Honor, because ultimately it is controlled by the executive. And we don't dispute that. As this court found, WICO is 100 percent controlled, and the executive's power is within the authority of the public finance authority, which holds 100 percent of the shares, to appoint members to the board of WICO. So it is controlled. It's not a rogue agency. The WICO board is appointed by the PFA and ultimately through the governor. And so it is always controlled by the executive. It's just that operationally the board, which is appointed by the executive and controlled by the executive, which is the reason why this court held that for constitutional purposes, it was considered a government entity. That gives the executive the control. But a decision has been made by the executive and by the legislature to allow WICO to operate through its corporate charter, and that was enacted into law. So it's through the executive. That's true. It's just that it is a different structure. But it doesn't make it a rogue agency, Your Honor, and it doesn't make it a fourth branch of government. Let me ask you a question, and I'll put it to you. And I don't – if we decide to affirm, but affirm on the basis that these folks weren't regular employees, would you be dissatisfied? Is that what you don't want us to do? I understand you want an affirmance, but if it's on the basis that they're not regular employees, is that problematic for your client? Well, if you're suggesting that you would be affirming on a basis that suggests that WICO's employees are subject to civil service requirements and to all of the other attributes that go with that, no, that is not what we would want, Your Honor. What do you want? On what basis do you want us to affirm? On the basis that the district court granted summary judgment, which is, WICO's employees are subject to the Wrongful Discharge Act, the Employee Handbook, and the strictures of the Stock Purchase Agreement. And these employees were treated under those provisions, and under those provisions they did not show that they had a property interest in continued employment. Had they had an employment contract, which could have been negotiated, and in fact was attempted to be negotiated with Mr. Sproul, but it never came to fruition, then they would have been protected. But WICO is handled, and all of its employees have been handled since its acquisition under the Wrongful Discharge Act. And that has worked very well. And that was complied with, and there was no property interest? Correct. Because, well, first of all, the Wrongful Discharge Act didn't apply to them because they're managing their employees. I'm a very simple guy. I'm just trying to figure this out. So what you're saying is there was no property interest, no contract, and they were treated properly under the WICO protocols? Yes. But the basis you state, is that really what your adversary is arguing here? You know, the Wrongful Discharge Act and the rest? No, that's not what she's arguing because that argument failed below and she decided to try a new one when she came before this court. That is what was argued below. That is what was argued, and that is what the court decided. The argument below was they're covered by the Wrongful Discharge Act, and there was a convoluted argument as to why, even though they were managerial employees, they should be covered anyway. And that argument was abandoned. But that was the argument. In fact, before the briefs were filed, in the concise summary of the case, that was still the argument. It wasn't until the briefs was filed that this new argument was made. So the argument throughout this case, the argument that was addressed by the evidence, the argument that was addressed by the judge and the parties, was that somehow through a reading of the Wrongful Discharge Act and the Stock Purchase Agreement, you could find a property interest under Virgin Islands law to protect these two employees and give them a 14th Amendment claim. And the district court examined all those arguments and said it's not there. And that is what we want you to affirm because that was correct. That is what was before the court. That is what was argued. And that is what applies to WICO under Virgin Islands law, as interpreted by this court in its prior opinion, and as further interpreted and explained by the Virgin Islands Supreme Court in the taxi case. Thank you, counsel. Thank you. Your Honors. Why should we not affirm on that basis? First of all, the Wrongful Discharge Act does not apply to governmental employees. So that's one of the reasons. These folks are regular career service employees, according to the definitions in the Virgin Islands Code. Where did you argue that in the district court? We argued it in the – first of all, it's raised in our complaint, which is the count to joint appendix at 90. It's raised, again, in the – What's that count style, Des? Violation of due process. We've been arguing due process violations. Okay, but – and then within that count, where do you mention – do you mention regular employees? Do you allege that your clients were regular employees? We don't allege regular employees, but those issues came up in the first set, in the first appeal that Your Honor authored. We raised the issue of a public employee. I cited that. Wait a minute. The first – all right. We had a – there was a prior opinion. Right, right. But I'm trying to get what the averments in the complaint were to make sure it was raised. It was raised as a due process violation, that they were entitled to protections of the Virgin Islands law. They came back with a – Right, but you have to allege that they were classified and regular, right? Let's wind back, Your Honors. We – Gershwin Sproul, contrary to what appellants state in their brief, which was completely false, filed a claim with PIRB, Public Employee Relations Board. I'm asking in your complaint, did you allege that Sproul and Smith were classified civil servants? No, we did not allege it. It was a generic complaint that said because they worked for WICO and it was a public entity, they therefore were entitled to due process protections. All right. Okay, so you made a claim that their constitutional rights were violated, but in support of that claim, you did not allege that they were classified regular civil servants. We did later on in the briefing in the first appeal. Before the court already ruled it was a public entity, we briefed – that issue was briefed, but very – Well, but after our court ruled it was a public entity, it went back to the district court, right? That's – And I'm asking where in that district court did you argue to the trial judge? Remember, we're here to review the work of the trial judge. Where did you argue to the trial judge that Sproul and Smith are classified regular employees? It wasn't addressed in the motion for summary judgment that we responded to. So we responded to what was pled by the defendant. They didn't plead. The defendants – Well, what they briefed. They briefed. So you didn't plead it in your complaint that they were classified or regular. Then they file a summary judgment motion, and the issue of whether they're classified or regular is never really joined and briefed and argued to the trial court. That's what it sounds like. The facts were never developed in answer to one of your prior questions, Your Honor. I mean, but the facts are in the record. I think Your Honors can reverse based on what's in the record. The district court erroneously failed. Basically, what our briefs did, what our brief does, is do what the district court should have done, which is go through the analysis to whether these folks are regular employees. And we go through the analysis that Your Honors just discussed with the applicant. And that's why Judge Gomez mentioned it in his opinion. Judge Wiginton. Excuse me, Judge Wiginton. Thank you. Yes. Judge Wiginton doesn't just say what opposing counsel says today. Rather, she also mentions that they're not regular. She goes off on this. That's in the opinion, as I recall. Yes. She goes off on this tangent, stating that because they didn't sit for competitive exams, therefore, they can't be public employees. Well, that's not correct under the Virgin Islands Code. And they do fit into that exception. All right. Would you address, though, what Ms. Rich was arguing? Because it's interesting, the notion that WICO is truly idiosyncratic. It's owned and controlled by the executive branch. But that it's just wrong to assume that because it's owned and controlled by the executive branch, that all of its employees are subject to the Chapter 25 and all the civil service requirements. I don't think it's wrong to assume. And I think that if the legislature wanted to amend the statute, which it could have easily exempted WICO in the statute that sets forth the exceptions, UVI, University of Virgin Islands, WAPA, Water and Power Authority, they could have easily amended that statute after the act, after the purchase. But that statute doesn't put WICO in that same regime, does it? No. It makes it clear that that regime takes those public corporations out of the civil service. So because it's not exempt. But how do we know this one's in the public service? Because of the catch-all. They have to fit into the definition. Because if they're not exempt and they meet the definition of regular employee, they therefore are employees of the executive branch and are members of the career service of the Virgin Islands. And the reason this is such an odd case is because these folks were hired at a time. Now, if they would have been a government employer, they would have gone and sat through the regular process. Because they were grandfathered in, some of these facts don't exist. But we tried to argue in our briefs factually that they still fit it. We looked at the issue of what is a competitive exam. You don't have to sit down and take a test to have competitive procedures. And if you look at how Bisholta was hired and Mr. Sproul was not hired, that was a competitive procedure. So they fit into this box because they don't fit anywhere else. And that's what the statutes say. And that's what your prior holding, I believe, it's consistent with your prior holding. And I believe it's consistent with the Virgin Islands Supreme Court holding in the tax law. You want all of WICO, then, to be subject to the civil service regime. And an opposing counsel wants none of WICO to be subject to the civil service regime. That's where we are after all this, right? Unfortunately, your honors, it's an odd thing to fit. Shouldn't we just be sort of brutally honest and say this thing doesn't fit anywhere? That's what it sounds like. We've learned here in court today. You're both trying mightily and you both seem very knowledgeable about this. But you both seem to be making it fit somewhere it doesn't fit. Unfortunately, I've been representing these folks. One employed 17 years that was marched out by security in an embarrassing way after 17 years of service. And the other one, 31 years of service, same way, marched out by security by Mr. Bicholta, who no longer is running at the head of WICO. He's gone. And it's just unfortunate. And they have due process rights. Once they were purchased by the government, they acquired due process rights pursuant to your prior opinion. That's our position. This is a public employer. By arguing they're a public employer and that they're regular career service employees, we are therefore giving up the Wrongful Discharge Act argument. And how I read 5826 now is the intent of the Danes at the time of the purchase was, we've had these folks for forever, and this is how Danes operate as employers, more European. We don't want them fired willy-nilly, so therefore they are subject to the protections as a private employer now to the Wrongful Discharge Act, which at that time, your honors, the Wrongful Discharge Act did not exclude managers and supervisors in 1992. It wasn't amended until 2010, around the time of the Hotel Association case. So at the time of the purchase, the WDA covered these folks. I could have represented any one of them under the WDA if they would have coverage. So the purchase said, we have all these people. You can't fire them unless you have good cause. So those rights have to be transferred to them. Where did the purchase say that? It's in the Act 5826. We've been arguing this. That's not the Stock Purchase Agreement, right? The Purchase Agreement, yeah, Section 5, I believe. The Stock Purchase Agreement says that the CFO and the COO can't be fired? It says all of our employees cannot be fired except for good cause. Well, yeah, but didn't Bushell – well, I guess that's part of the dispute as to whether there was cause or not. Sproul and Smith were employees at the time of the purchase. The agreement says you can't fire these folks. We don't want them fired. They've been with us a long time, unless for good cause. That's what it says. But that's not your argument now. No, but I'm – this is – So what does that have to do with this, where we are now? It's consistent with – your honors are struggling with how to uphold this opinion. Unfortunately, you're asked to do the job of the legislature, which hasn't been done. I'm not struggling to uphold or reverse. I'm struggling to understand where in the world WICO fits because it strikes me just personally as a remarkably idiosyncratic entity. And I've never seen – I don't see a clear analog with the federal government or – I don't know. Is it not completely idiosyncratic? I mean – It's possible, your honor, but I believe based on the facts it fits under the executive branch. It's either – it's not judicial. It's not legislative. So where is it? And the LeBron case says that Amtrak is an executive agency. So I think under LeBron, it's considered executive under the VI. And then we also don't have a constitution here. We have the Organic Act, so we had to look. We have – that's another issue. All right. Thank you, counsel. Thank you. We'll take the case under advisement. Thank counsel for their excellent arguments and briefing.